The next case on the call is agenda number seven, People of the State of Illinois v. Gocmen. Ellen, are you ready? You may proceed. May it please the Court? Counsel. My name is Leah Bendick from the Illinois Attorney General's Office on behalf of the people. This Court should reverse the judgments below that granted and affirmed the rescission of the summary suspension of defendant's driver's license because they erred in holding that Officer Beatty lacked probable cause to believe that defendant was under the influence of drugs at the time of his arrest. Not only was this result erroneous, but the appellate court majority offered a dual rationale for this result that was also mistaken. By correctly first noting that Officer Beatty lacked any training or experience in detecting drug use, but taking that fact to an extreme place by holding that as a result he was categorically unable to reliably develop probable cause connected to drug intoxication. The majority also erred in citing the fact that defendant mentioned that he was a diabetic as a factor defeating probable cause under the circumstances. This Court should not only correct the result, but correct these rationales for any of three independent cases. Number one, some cases, and this case is one of them, present circumstances related to drug intoxication that don't require the application of extensive training or expertise to understand their connection with drug intoxication. Number two, the probable cause standard itself that applies for this arrest stage is well established to be low and does not demand the type of certainty that expertise does help provide. And finally, this Court could disagree with the very premise of the appellate court majority's holding. The appellate court seemed to decide that only experts can recognize drug intoxication. This in itself could also be disapproved. So to take each of these three paths in turn first, this presents a good example of a case with a number and a type of circumstances related to drug intoxication that show that expertise need not always be present to understand them. Here the relevant circumstances basically fall into two categories. Circumstances that related to the defendant's behavior and symptoms and circumstances related to indication of ingestion of illicit drugs. When Officer Beatty arrived at the scene here around 11 a.m., he had directly observed that the defendant was sitting in the driver's seat of a running vehicle. He saw that he was in and out of consciousness. He noticed that the vehicle was half on and half off of the roadway. He watched as the defendant struggled to respond to verbal commands by the paramedics also at the scene to exit his vehicle. And he heard him, defendant, misidentify what roadway they were on, showing his confused state. Officer Beatty also described him as appearing, quote, tired and lethargic. Now in addition to these direct observations, the paramedics provided additional information. The paramedics told Beatty that defendant was sweaty, that he had a high heart rate, and that he had pinpoint pupils. Even just on the basis of what Beatty observed, but also in light of what the paramedics provided in terms of information, a reasonably cautious person, even an untrained and inexperienced officer, would look at this collection of circumstances and believe that something was wrong with the defendant, that either he was having some sort of medical problem or he was impaired, perhaps by an intoxicant. Counsel, how can you say that training and experience is not relevant? Haven't we said so in many cases? I actually disagree with the defendant's position that we say it's not relevant. We agree it is relevant. But the problem is it cannot be determinative. And that was the mistake the appellate court majority said. We agree. The U.S. Supreme Court, this court, have said that, yes, the training and experience of the officer is relevant. A police officer? Sure, it is relevant. I definitely agree. But the problem with the appellate court majority's position is it said that given his lack of training and experience, he could never, under any circumstances, reliably develop probable cause. It's the categorical approach, the requirement of training and experience that is the problem. We acknowledge, as Your Honor is suggesting, there may be a different case out there that has lesser circumstances of a type that only a more experienced officer could validly develop probable cause. There can be those cases. But the fact is this case, some cases, have a number of circumstances or types of circumstances that even an untrained officer can validly develop probable cause. And importantly, in addition to these symptoms that Officer Beatty observed, were the evidence of ingestion of illicit drugs in the car and on defendant's person. Officer Beatty first took the step of himself checking and talking to the paramedics, and he determined that there was no sign of alcohol. There was no smell of alcohol on defendant. He noted that in defendant's wallet in the center console of the vehicle, there was a small baggie that contained a brown granular substance. Now, once again, this is an item that an expert might be better able to more certainly identify as potentially being an illicit drug. But even an untrained officer would look at a baggie containing a granular substance and think this might be illicit drugs, especially in light of what is perhaps the most important circumstance here, which is the item that was on the front passenger seat, and that was the half-metal beverage can. It had burn marks on its interior, and it had a residue on its exterior that appeared brown and tannish. And Officer Beatty, who was trained in conducting field tests, applied a field test and got a positive result. So here we have an item of confirmed illicit drugs. Not only that, but also on the front passenger seat was an uncapped and used hypodermic syringe. Now, not only is it important that the fact that it was a syringe, which is potentially connected to illicit drug use, it's also important that it was uncapped. It's very reasonable to infer that people do not leave uncapped syringes on their car seats for extended periods. This would support an inference that it was recently used, which was all the more corroborated by the fact that the paramedics said that the defendant had a fresh track mark on his arm. So again, the fact that it was characterized as fresh supports the conclusion that he recently injected himself. Now again, while the baggie, while the track mark, while the syringe aren't definitively connected to illicit drug use, the can was in light of the positive field test. And again, remember, we're at the probable cause stage. So not only were these a number and a type of circumstances that did not require expertise to understand their significance, but they were also, remember, we're at the probable cause stage. This is the second basis potentially for reversal. And that is that probable cause is a low standard. This is well established. The U.S. Supreme Court has reaffirmed this earlier this year in the District of Columbia versus Westby case, characterizing it as a low bar that is lower than the preponderance of the evidence standard, which means that it need not even be more likely than not that the officer has this belief that criminal conduct occurred. It's also important to note that for probable cause purposes at least, the officer need not eliminate all potential innocent explanations for what's being observed. And that is why the fact that the defendant mentioned he was a diabetic cannot be a factor to defeat probable cause, because they're still on the basis of all the circumstances present was a reasonable basis to conclude that it was ingestion of illicit drugs and not a diabetic reaction going on. Finally, it's important to note that specifically in the DUI drug context, Illinois precedent has confirmed that the officer doesn't need to definitively determine which type of drug that the arrestee had ingested. So really, these areas in which probable cause does not demand certainty are the types of things that expertise can admittedly help with. But because you need not know for sure that a symptom is due to drug use versus a medical problem, you need not identify which particular drug is in the baggie, for example. That is why it's improper for the appellate court majority to, as a per se basis, categorically held that an officer who lacks training and experience is unable to reliably develop probable cause. This is also shown not only in these general principles, but the many cases that, of course, apply them. At pages 22 through 24 of the opening brief, there are several examples provided that were evaluating the validity of arrests. And what's notable about these cases, there are different kinds of drug-related offenses. But it's important that these cases don't even discuss the level of training or experience of the arresting officer. If it were, in fact, a requirement that there be some training or experience, like the appellate court majority held here, then every case evaluating the validity of arrests would have to discuss that topic in coming to the conclusion that an arrest is valid. So these cases provide another basis to understand why, at least at the probable cause stage, the appellate court majority's rationale imposing a per se requirement of training and experience was erroneous. And finally, this court should consider the practical fallout of such a categorical approach. While, of course, it's helpful for officers to have this training, and it is relevant to the probable cause determination, it is impractical to think that every law enforcement agency in Illinois could ensure that every officer who might respond to a traffic offense or a potential DUI would have this type of training. And even if that were possible, in terms of having enough resources to make that happen, the appellate court majority also placed a lot of emphasis on experience. So that implies that there's some sort of magical threshold of either years on a law enforcement agency or numbers of arrests that had been previously effectuated, that until an officer has crossed that threshold, that their arrest would be categorically invalidated, and that simply cannot be. So in addition, considering these probable cause standards, this court should look at the variety of circumstances in this case related to the behavior and symptoms of the defendant. This court should look at these multiple indicia of recent illicit drug use that were found at the scene But even in addition to that, there's a third basis, potentially, for reversal, and that is questioning the very premise of the appellate court majority's holding about whether only experts and not lay people can recognize drug intoxication. In discussing this, the appellate court majority was citing the case of People v. Shelton, which is an appellate court case that, to my research, is a sole case in Illinois to directly, squarely consider whether a lay person opinion testimony on drug intoxication is ever admissible. Shelton also contained the statement simply that lay people are not familiar with drug intoxication and can't recognize it. In coming to that holding, Shelton did cite one other case, People v. Jockwith, but Jockwith was a sufficiency of the evidence case. And so because it was looking at the level of, you know, looking at the state's case to see if it had sufficiently proven beyond a reasonable doubt that that defendant had been under the influence of drugs, the court in Jockwith said, all we have here is lay opinion testimony on the part of non-expert police officers and ultimately concluded that that was insufficient to prove drug intoxication beyond a reasonable doubt. But coming to that sufficiency ruling does not create a rule that lay opinion testimony is never admissible. So in other words, Shelton has a very shaky foundation based at most on dicta. So instead if this court, which it would be a matter of first impression if this court were to consider whether lay opinion testimony on drug intoxication is appropriate, should instead look to Illinois Rules of Evidence 701 and 702, which distinguish when certain issues are better addressed by an expert opinion witness or a lay person opinion witness, and clarify that the key is whether a topic is one that is a subject of specialized knowledge, scientific knowledge, technical knowledge, something like that. And so in trying to make that determination about drug intoxication, the opening brief at pages 28 through 30 provided some data from federal government reports that are appropriately subject of judicial notice by this court to just provide a rough outline to explain that drug intoxication is analogous to two other topics that this court for decades has allowed lay opinion testimony on. And those two are alcohol intoxication and certain types of mental capacity or illness issues. And so of course the federal government data doesn't perfectly correspond to the contours of the Illinois DUI statute, but it simply meant to emphasize that the analogy is appropriate to imagine that a lay person, whether an average person would be familiar enough, would be around a topic that's prevalent enough that they could potentially recognize it in a competent way. And so just how a lay person could say I observed John Doe and I saw him acting like this, and from my experience I thought he was drunk, in the same way that person could be expected to competently testify that I suspected that he was under the influence of drugs. And if this court agrees that lay people can potentially provide that type of opinion testimony appropriately, then that defeats the appellate court majority's premise here that Officer Beatty, because he had no training and experience, was somehow categorically unable to reliably identify someone as being intoxicated by drugs. So on any of these three bases, this court should reverse. And it's important not only to reverse the result in this case, because in fact given the many circumstances related to his symptoms and behavior and the items of illicit drug ingestion, that yes, there was probable cause in this case, but perhaps even more importantly this court should correct the dual erroneous rationales that the appellate court majority provided, because they do have implications beyond the DUI drug context. They have implications even for any type of more complex crime, for things that might require proof of some sort of officially verifiable fact that the arresting officer might not know definitively at the time of arrest. And so unless there are any further questions from this court, we would ask that this court reverse the judgment of the third district. Thank you. Thank you. May it please the court. My name is Elizabeth Butler, and I am here on behalf of the defendant, Ahmed Gossman, defendant appellee, and I am asking that this court affirm the decision granting defendant's petition to extend the statutory summer suspension. There are three issues that I would like to address as well. The first is the requirements for probable cause to arrest for a violation of DUI drugs. The second is the necessity for expert testimony in a DUI drug matter. And third are policy considerations. Now going to the first point, the requirements for probable cause to arrest for a violation of DUI drugs. Section 511, 501 of the vehicle code, includes the element of impairment in its language. And now what the state, in asking this court to not affirm the lower court's ruling, relies on a series of statutes. In effect, what they're doing is they're melding distinct statutes together under the umbrella of drug-related crimes. As well as the drug paraphernalia act. No? I'm sorry, I'm sorry. So what the state is doing is melding three distinct statutes together under the drug-related crimes argument. But if you look at the individual statutes, they have different elements and different requirements. As I said, the DUI drug statute requires an impairment. The drug paraphernalia act allows for the trial court or the trier of fact to consider the proximity of the paraphernalia to the drug. And then with possession you have sort of under the control or on the person of the drug being. Now the legislature intended those distinctions. And if it wanted something different, it would write and it may write the statute in another way. But as it stands, they're distinct statutes. And impairment is a requirement to show a DUI for drugs. But on the issue of development of probable cause counsel, doesn't the court look at the totality of the circumstances? Yes. And the parties agree on the fact that probable cause is not a perfect, doesn't require perfection. It doesn't require the standard that is required at trial. But we have to understand that it's rooted in the Fourth Amendment. It's rooted in Article I, Section 6 of this state's constitution. It has meaning. And I think a good analogy to show the meaning of probable cause and the significance of it, which can't be overlooked, is to look at, if you may, a typical investigation, an investigatory stop of a DUI alcohol under those conditions. And I think that's an appropriate analysis to make, because it is within driving under the influence of alcohol, is within the same statute of driving under the influence of drugs. So for the purposes of alcohol intoxication, the courts have said it is within the range of common knowledge. You don't have to be an expert. But if you look for purposes of establishing probable cause in a DUI alcohol stop, the officer will observe and become suspicious if he observes or she observes a car that is either weaving or is not driving at a constant speed. The officer then follows the car for a period of time. If the officer's suspicion remains, the officer will stop the car and approach the driver and talk to the driver. While the officer is talking to the driver, he's gathering information. He's looking to see whether their eyes are bloodshot, whether they slur. When asking for his driver's license, whether or not he has dexterity in getting those, he shows dexterity in getting his license. All of these are factors and information that the police officer is gathering to determine if probable cause exists. Let's say his suspicions are confirmed. That's not over. The analysis of the protocol for making a stop and reaching probable cause is not over yet. The officer will ask the driver to get out of the car, to submit to three different field sobriety tests, and once again looking to confirm the suspicions and make the information that he or she gathers more than suspicion but amounting to probable cause. And then even if the driver fails those tests, the officer may also ask the driver to submit to a breathalyzer. So when we talk about probable cause and we talk about the fact that it doesn't rise to the level of what's required at file, it's still significant because it involves the impinging on a driver's Fourth Amendment right for unreasonable searches and seizures. Isn't that what we have here? We have a number of observations that all come together to make a conclusion. Correct. And that leads me to my second point, which is the necessity for expert testimony in these areas. In this case, the circuit court properly granted the petition to rescind because the officer had no knowledge, training, education, skill, or experience in detecting drug impairment. And Ms. Bendick did give the definition of what expert testimony, when it's necessary and what it is for, that is, if it can assist the trier of fact in understanding the evidence before it. Counsel disagrees with the state in their argument that drug impairment is so pervasive that it can be considered common knowledge. And I think the most, the best example in this case is Officer Beatty. He had been working for the police force for two years. During those two years, he never had the opportunity to make a drug arrest. He never had the opportunity in observing another officer make that arrest. The training that he had was limited to the NARC swipe. And when he did it on this case, it was the first time he had ever done it. Now, it's interesting to note, and I'd like to draw attention to two pieces of information that the officer had that could have shown impairment. And that is one of them being the defendant's vitals, I guess I'll call that. The elevated heart rate, the dilated pupils, sweating and being in and out of consciousness. And the other one is the track marks. So going to the issue of the vitals, the officer was given that information by the paramedics. And really at the petition to rescind hearing, the officer recited what he was told, but the officer did not have the skill or education or knowledge to say that a heart rate of 144 is indicative of being under the influence of opioids. There was no information to say that the effect of opioids, and if in fact an elevated heart rate would either rule out opioid impairment, that is the possibility that if one is under the influence of opioids, one's heart rate is lowered. Or in fact, if one is under the influence of opioids, it's raised. This was a fact that he had, but the significance of that fact is something that he couldn't relate to or explain to the judge, the circuit court, because he simply didn't have the knowledge of it. So probable cause, the definition would change. It would no longer be a reasonable person would believe that a crime occurred. It would have to be an expert. I would disagree with that. For purposes of these cases, in order for the circuit court to understand the information, there needs to be a higher level of training or skill to understand these. So only certain police officers, right? You can't expect every police department, every municipality to have officers, every one of them trained in the expertise that seemingly you would require, right? So there'd only be, under this set of facts and circumstances, only certain officers would be able to have probable cause in this type of occurrence. Regardless of the circumstances. In this case we know, and the state, excuse me, the circuit court and the appellate court was correct in saying that this officer did not have that level, the necessary level of knowledge. We don't know whether or not there was an expert on the force that could have been called to assist in making the arrest and making a determination. This also goes to the issue of somebody unconscious, behind the wheel, a call is to somebody unconscious, off the side of the road, and if this other officer, or if it's a small municipality, they don't even have that officer, there's nothing you can do. With respect to finding a probable cause, aren't we saying there's probable cause and there's super probable cause in these drug cases? The analysis would be whether there was probable cause to arrest for this statutory violation. That's not to say that there wouldn't be other violations that the driver may have committed that was evident and that was for which he or she could be arrested. And I think this sort of goes to a response in answering your question to what the state was arguing, that the appellate court was wrong in saying that there is a police officer such as this one would never have probable cause to arrest. That's not the case. As the many cases cited by the state goes to show, a defendant is often charged with multiple violations in a stop. So it may be that the officer does not have the necessary skill and knowledge to arrest for a DUI drug, but it doesn't mean that there aren't other statutory violations for which the defendant can be charged. The other issue that I want to, moving from the vitals to the other one, is the track marks. Again, this was information related to, from the paramedics to the officer, and there was no, other than reciting that information, there was no, the officer did not have any independent knowledge to express the importance or the significance of that information. And I would like to in particular stress the state's argument in their reply. Now the circuit court, when denying the petition, excuse me, when granting the petition to rescind, said something to the effect that, well, syringes, track marks, they go hand in hand with the diabetic. That wouldn't be out of the ordinary. Track marks don't, do they? Track marks are into a vein. Insulin injection is not. And that's my point, Your Honor. It was the circuit court saying, well, this goes hand in hand. So what does that show? That goes to show that information, and if I just may back up, the state's argument, and it seems to be mirroring yours, is that this is highly speculative. And the state was arguing that the circuit court got it wrong. Assuming that the circuit court got it wrong, and your question or your statement mirrors that, what does it show? It shows that that information is not commonly held. And it's not in the range of common knowledge. And how did the state try to refute and prove that the circuit court was wrong? It relied on the section within the Illinois Administrative Code, particularly providing services, medical services in the community, particularly insulin. So what that goes to show is that there is a level of knowledge, of skill, of medical knowledge, that is necessary in helpful and necessary for the circuit court to understand the significance of the track marks. It would be someone who had that knowledge that could have testified to assist the circuit court in understanding the facts that were before it. Is the probable cause test objective or subjective? I believe it's objective. Would requiring the experience and expertise that seemingly you would require in this instance turn that into a subjective test? No, because the purpose of having the skills and having the training is to turn it into an objective. That you develop protocols. The education, that the training standardizes determinations and protocols and tasks that one needs to do to determine whether or not the individual is impaired by drugs. This also brings, and your question also brings to issue, the idea that there is a level of knowledge, of skill, of medical knowledge, that is necessary for the circuit court to understand the significance of the track marks. And as the state discussed before this court, and some of the questions seem to suggest, that it is a high bar. We're not talking about the necessity of a Ph.D. or a degree. A person is considered to be an expert if they have, by their skills. By their experience, by their training, by their education. There's a whole gamut of ways in which an individual can gain expertise in an area. And, for example, in Seborrowski, the police officer testified to a relative being a diabetic. And so he was able to testify as to a relative being a diabetic. And there was a proportion of what he observed based on his knowing this relative and being a diabetic. Now, the court in Seborrowski then said, well, you don't know the physiological effects of diabetes and alcohol. So we're not going to allow you to go any further on that opinion. But to understand what makes someone an expert, there is great fluidity in gradations right now. It's the circuit court's determination, and it should be left there. There shouldn't be a bright line, because there really can't be a bright line, because it's dependent on the issues in front of the court. It's depending on the basis in which the witness is testifying and where their knowledge comes from. There is a fluidity here that if this court were to try to establish a bright line, which it didn't do in People v. Stout, and it shouldn't do in this case, you would create an avalanche of appeals and trying to weigh apples to oranges. I would also like to address the issue of lay opinion. And again, I would argue that this court need not make that decision, a determination in this case, because when you look at the police officer's testimony, he really served, I believe my time is up, Your Honors. So I would ask that you affirm the court's order granting the petition to rescind. Thank you. Thank you, Your Honor. I basically want to make two points in rebuttal. The first is to emphasize that this is an appeal from a rescission proceeding. And in the rescission proceeding, the burden is on the defendant to show that he's entitled to have a summary suspension rescinded. So to the extent that my opposing counsel was trying to say that the state had to prove certain things, that was the 18.1B2 of the Vehicle Code, and the only issue that that subsection raises is whether the police officer had reasonable grounds to believe that the person was driving under the influence of alcohol. That was the sole, or sorry, the influence of drugs. So that was the sole issue at that proceeding. Now, to the extent that my opponent was talking about how their expertise is required to understand exactly how maybe a diabetic would receive insulin, things like that. Actually, I wanted to disagree and remind the court that because this is a probable cause determination, the very point is that the officer did not have to definitively eliminate diabetes as the cause. And the best case to illustrate this that was cited in the opening brief, Smith v. Ball State University, that was a case where the defendant had been driving off into the sidewalk and was found unconscious in the driver's seat of his vehicle. But in that case, he had a medical bracelet on that said, I'm a diabetic. One of the responding officers who arrived said, oh, I recognize this person. Four days ago, he was in the ER in diabetic shock. They actually confidently knew that this was a diabetic person and that that could have been a basis to explain the fact that he was driving erratically and that he was unconscious. Nonetheless, the Seventh Circuit found that there was probable cause for arrest for DUI drugs. And that illustrates that at least at the probable cause stage, if you're looking at erratic driving, you're looking at symptoms that are unusual for a person who would be healthy and sober, that you can develop probable cause for DUI drugs even when there's evidence even more stronger than we have here that there is a potential innocent explanation for what's going on. And so even if imagining if defendant had brought that sort of evidence at the rescission hearing to somehow more definitively establish that he was a diabetic, that would still not defeat probable cause in this case. Because remember, the question is, what did the officer know at the time of the arrest? And what he saw at that point were several symptoms and behaviors, as well as several items that are connected to illicit drugs. And most importantly, one of those items, the burned can, had confirmed presence of an illicit drug on it. That alone is enough to develop probable cause. It does not require any sort of expertise to make sure that these specific behaviors are tied to a specific drug. That is just enough under the totality of the circumstances at this initial stage for the officer to develop valid probable cause, even, as we acknowledge, for an officer who has absolutely no training or experience. And I also wanted to reiterate my second point to make clear the State's position here. There are three independent bases for reversal. And we acknowledge, as opposing counsel brought up, this Court doesn't need to actually directly consider whether Shelton was properly decided. This Court need not address whether lay opinion testimony on intoxication is permissible to resolve this case. It's just offered as an independent basis for reversal. And instead, actually, I would suggest it's perhaps most important for this Court to correct what happened below, more on centering on the probable cause standard. To reaffirm that the police officers aren't required to have training and experience. To reaffirm that the officers need not definitively eliminate innocent explanations. And to reaffirm these well-established principles of probable cause, that it is indeed a low standard. And so if there are no further questions from this Court, we would again ask this Court reverse the Third District's judgment and perhaps, more importantly, correct the two erroneous rationales the Court provided for that decision. Thank you.